# RAYMOND AND RAYMOND

ATTORNEYS AT LAW
7 GLENWOOD AVENUE, 4th FLOOR, STE. 408
EAST ORANGE, NEW JERSEY 07017
--------
TELEPHONE: (973) 675-5622
TELEFAX: (408) 519-6711
VOICE MAIL: (815) 642-4613
EMAIL: BANKRUPTCY123@COMCAST.NET

May 16, 2014


Honorable Michael Kaplan, U.S.B.J.
U.S. Bankruptcy Court
402 East State Street
Trenton, NJ 08608

    Re: Ifran Shah
        06-20937
        Chapter 13
    Proceeding: Inserra Supermarket's Objection to Debtor's
            Motion to Reopen Case
    Hearing Date: May 20, 2014 @ 10:00 am

Dear Judge Kaplan:

    Please accept this letter brief in lieu of a more formal response to the above matter.

    Inserra Supermarket, Inc ("Inserra") is a state court defendant in an action brought by the debtor for a personal injury action.  Inserra filed a motion for summary judgment in the state court alleging judicial estoppel of the cause of action based upon the debtor's failure to disclose the post-petition cause of action precipitating the instant motion to reopen the case.

    Inserra originally filed an objection to the above matter based on the position that 1322(d)(1) of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") provides that plans can only run five years in length and here, as five years has passed, no further payments can be effectuated.  Therefore, without the ability to effectuate any further payment to creditors, the reopening of the case would accomplish nothing.

    Inserra has also filed a supplemental objection seemingly relating to their judicial estoppel argument.  Inserra argues that the debtor is now asserting an inconsistent position from

his previous case and therefore the integrity of the judicial process requires that the reopening be disallowed.

For the following reasons, Inserra's arguments should fail and the case should be reopened for the administration of the asset described in the debtor's certification in support of the motion to reopen the case.

Before the merits of Inserra' argument can be addressed, however, there's a fatal issue of standing that must be addressed.  In the primary case Inserra cites in support of its position, In Re D'Antignac, 05-10620 (Bankr. Ct. SD Georgia 2013), the court states that "I agree with the cases holding that defendants in non-bankruptcy court proceedings lack standing to oppose the reopening of a bankruptcy case.... The mere act of reopening a bankruptcy case does not afford any party substantive relief; it is purely a ministerial act with no legal significance for the underlying bankruptcy." "Since bankruptcy estates are administered for the benefit of creditors and the debtor and not for entities who may owe money to the bankruptcy estate, state court defendants have no right to complain about how the estate is administered."  In re Riazuddin, 363 B.R. 177, 182-183 (10th Cir. B.A.P 2007). "State court defendants are not subject to an injury in fact based upon the reopening of the bankruptcy estate, nor do they hold a legally protected interest that the debtor seeks to affect through the course of the bankruptcy and thus are not a party in interest." In Re Phillips, 2012 WL1232008 at *3.

Due to the fact that Inserra was not a party to the bankruptcy case and is merely a creditor of the estate, Inserra lacks standing to pursue this objection.  Although the trustee has filed an objection as well, it is limited in nature and merely relates to the unclear value of the asset to the estate, not to the actual administration of the asset itself. As any recovery by the debtor is entirely speculative at this point, it is premature to discuss value but this will surely be discussed with the trustee at the appropriate time.  Therefore, there are no actual objections to the reopening of the case itself that would prevent the granting of the relief requested.

Nevertheless, if the court still wishes to rule on the merits, there is ample reason to rule in the court's favor. 350(b) of the code provides that a case may be reopened to administer assets.  Inserra cites *D'Antignac*, *supra*, for the proposition that estate assets cannot be administered after the five year limit of 1322(d)(1) has expired. However, the court in *D'Antignac* misinterpreted the bankruptcy code in their decision. 1322(d)(1) states that a plan for high income earners as determined by the means test may not provide for payments over a period of more than five years.  1322(d)(1) is a companion to

1325(b)(4) of the code and deals with the applicable commitment period. The applicable commitment period was designed to ensure a maximum repayment to creditors from all income and assets earned or acquired over a sufficiently long period of time, not as a sword to prevent payments to creditors immediately after the expiration of the five years. The applicable code merely provides a time frame of how long all such acquired assets and income were subject to such creditors, not as a means to restrict such payment to creditors.

The words of a statute must be read in their context within the overall statutory scheme. Gale v. First Franklin Loan Servs, 701 F.3d 1240, 1244 (9th Cir. 2012). In 2005 Congress as part of BAPCPA created the applicable commitment period as a method to protect unsecured creditors by requiring debtors to make a good faith effort to repay what the debtor can afford over a meaningful period. Evan J. Zucker. The Applicable Comitment Period: A Debtor's Commitment To A Fixed Length Plan. ABI Law Review, Vol. 15: 687, 2007. "A minimum duration for Chapter 13 plans is crucial to an important purpose of 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased payments if a debtor's financial circumstances improve unexpectedly. Danielson v. Flores (In Re Flores) (9th Cir. 2013). Therefore, the applicable commitment period is a sword for the creditors to capture all income and assets over the specified time period, not a sword to prevent such payments. It would be the antithesis of the spirit of BAPCPA to use the applicable commitment period to prevent further payments to creditors where cases closed inadvertently or erroneously without administration of estate assets. The debtor here is only seeking to accomplish what should have been done during the pendency of the case.

Even without a resort to Congressional intent and overall statutory scheme, the plain language of 1322(d)(1) does not support Inserra's argument. 1322(d)(1) merely states that a plan may not provide for payments over a period that is longer than five years. The debtor's plan here did no such thing. The debtor's plan provided for payments over a 53 month period. Therefore it is in compliance with the plain language of the law.

That fact that post-petition causes of action become estate property pursuant to 1306(a)(1) has to necessarily envision cases where payments to creditors extend beyond five years. Indeed, using *D'Antignac*'s interpretation of 1322(d)(1) that all payments to creditors must be accomplished within five years would in many cases render 1306 irrelevant, including in the instant case. Even if this asset had been disclosed in the debtor's case, no payments to creditors would have been made from this asset as of yet, nearly seven years after the case was filed. The lack of

disclosure in the case has in no way delayed such payments.  The state court case would have proceeded in the same fashion and same time line and today none of these funds due from Inserra would have been paid into the case or distributed to creditors. If anything, although not required to, the chapter 13 trustee likely would have closed out the case a long time ago due to the indefinite burden on the estate and likely none of any funds eventually recovered would have been paid to creditors. However, surely, 1322(d)(1) does not place a limit on what can be administered pursuant to 1306.  1306 fosters the purpose of BAPCPA to ensure maximum payment to creditors.  If Congress intended 1322(d)(1) to place a limit on how long assets acquired by 1306 could be administered, it would have indicated something along the lines of "all property of the estate includes....all property...the debtor acquires after commencement of the case...*except if administration of the case pursuant to section 1322(d) would be impossible.*" Congress had to envision that certain post-petition assets acquired up to the date of closing of the case such as personal injury actions would take longer than five years to administer.  Indeed, 1306(1) specifically provides that all assets up to the date of closing are estate property.  Closing of cases, particularly of high income earners, necessarily has to take longer than five years as it takes several months after the completion of plan payments in month sixty for the case to close.  By *D'Antignac*'s logic, these assets acquired in month sixty-four or sixty-five would be impossible to administer.  All 1322(d) prevents is debtors prosing plans that by their stated terms  will necessarily take longer than five years to complete.

        The primary case cited by *D'Antignac* in support of their interpretation of 1322)(d)(1) is in actuality totally inapplicable to the facts of this case, or to the facts of *D'Antignac* for that matter. <u>In Re Hussain</u>, 250 B.R. 502 (D.N.J. 2000) dealt with a debtor whose plan proposed to cramdown several mortgages outside the plan over a period of thirty years.  The court merely held that the curing of any secured claims must be done within the five year period of 1322. *Hussain* dealt solely with the ability to cramdown and cure secured claims and made no mention whatsoever of the time frame by which estate property may be administered.  *Hussain* made no general rulings that payments to creditors could not occur from post-petition assets after month sixty. The part of the opinion cited by *D'Antignac* is taken out of context. It largely renders 1306 irrelevant to take a literal application of the rule that payments cannot extend beyond five years which is why the *Hussain* ruling merely held that proposed cures/modifications of secured claims must be proposed within five years.  *Hussain* makes no mention of payments to unsecured creditors.  Here in the instant case, the debtor is not now trying to effectuate a cure or modify a secured claim,

and is merely trying to effectuate a payment to unsecured creditors removing it from the ambit of *Hussain.* Moreover, the instant debtor is seeking solely to use estate property funds to effectuate such a payment, not using property acquired post closing of the case. Although the financial circumstances of the debtor in *Hussain* are not entirely clear, presumably the funding of such outside the plan payments many years past the sixty month of the case was relying on income earned long after the case would otherwise be closed and thereby not even estate property.

As *D'Antignac* wrongly ruled on these sort of facts, it is not surprising that there are cases which have, in fact, allowed reopening of cases for distributions to creditors after five years. See In Re Tarrer 273 B.R. 724 (Bankr. N.D. Ga 2001). The controlling factor in such cases involving previously undisclosed assets is whether the debtor's creditors would benefit from the reopening of the bankruptcy case. In Re James 487 B.R. 587 (Bankr. N.D. Ga., 2013).

There are also other equitable reasons to reopen the case. 350(b) provides that a case may be reopened for cause. Here, and as fully described in the debtor's prior certification, the debtor is facing a judicial estoppel claim in the state court based on this failure to disclose this claim. To be described more fully below and as already described in the debtors certification, an application of the principal to the debtors case would be grossly inequitable and not within the spirit of the law or the guidance of the 3rd circuit. Nevertheless, everything possible should be done to avoid such an outcome. The court has authority to reopen the case to allow dislosure of this asset specifically for this purpose of preventing a judicial estoppel claim. See *James supra.*

Regarding Inserra's supplemental objection as to inconsistent positions, it is part and parcel to the 800 pound elephant in the room, the judicial estoppel claim. Since they essentially involve the same defenses, I will explain why the principal as a whole is inapplicable to the debtor. If the court by ruling against this argument of inconsistency is to essentially defeat the judicial estoppel claim through collateral estoppel, then that may possibly be the end of the matter. If not, a declaratory matter will be brought following the reopening of the case to declare the debtor not judicially estopped. Nevertheless, the court should be aware of the basics of the case and why to allow even the possibility of such an action to pursue in state court would be unjust.

Judicial estoppel is a doctrine designed to protect the integrity of the judicial process by prohibiting parties from *<u>deliberately</u>* changing their position from one legal proceeding to

the next according to the exigencies of the moment.  There is no inflexible or exhaustive formula for determining the applicability of judicial estoppel and courts may use any considerations they deem fit within the context of a specific factual context. New Hampshire v. Maine, 532 U.S. 742, 121 S. Ct. 1808, 149 L.Ed.2d 968.

The 3rd Circuit has held that judicial estoppel is not meant to eliminate all inconsistencies no matter how slight or inadvertent.  Rather alleged inconsistencies should only be judicial estopped under he following criteria:

> "First the party to be estopped must have taken two positions that are irreconcilably inconsistent.  Second, Judicial estoppel is unwarranted unless the party **changed his or her position in bad faith - i.e., with the intent to play fast and lose with the court.** (Emph. Added).  Finally, a district court may not employ judicial process unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the Litigant's misconduct.

Carol v. Prosser (In Re Prosser), (3rd Cir. 2013).

In this case, the debtor should not be judicially estopped.

Regarding the first factor, and essentially Inserra's supplemental objection, there have not been two irreconcilable positions.  Although it is true that no amended schedules were filed to include the post-petition cause of action, the debtor never made any affirmative non-disclosure otherwise.  The cause of action was post-petition, four years into the case so the initial schedules filed under oath or original chapter 13 plan would not have disclosed the action.  Nor did the debtor filed any amended plans, schedules, or anything else whereby he asserted that no cause of action existed.  Nor is there any requirement in the code, Federal rules, local rules, nor testimony under oath at a 341 examination whereby debtor was made aware of or imposed with a duty to disclose this action. There seems to be no caselaw directly on point and nothing specifically in the 3rd circuit or elsewhere dealing with *passive* non-disclosure of post-petition assets where such non-disclosure was held to be a position taken by the debtor. Virtually every case counsel cites in his supplemental brief and every case on judicial estoppel in the bankruptcy context fall into two categories: those involving pre-petition causes of action not disclosed, and those involving affirmative non-disclosure where supplemental documents are filed with the court that should have appropriately made the disclosure but failed to do so. Clearly, in either situation a change of position could be easily found. In short the debtor never took any position with respect to this action prior to commencement in state court in order to be able

to be found to now take an irreconcilably different position.

    Regarding the second factor, this is perhaps the one most in defense of a judicial estoppel claim.  Even if the court concludes that the debtor's passive non-disclosure is considered a contrary position, there is no evidence whatsoever that this passive non-disclosure was done in bad faith.  To the contrary, there is evidence through the debtor's certification and other circumstances that the non-disclosure was merely a mistake and done inadvertently.  Again, the law is unclear in this area. What post-petition assets, exactly, are to be disclosed? Is change found on the street or holiday presents to be disclosed? Is there a good faith standard based on the value of the assets? The point is that there is no clear cut guidance on exactly what to disclose, or at least nothing definite enough to have put the debtor on notice of a duty to disclose. Even if the court concludes such a disclosure was necessary, the debtor was not aware of the need to do so and therefore innocently inadvertently failed to disclose it.  Surely, there was no deliberate, conscious, and purposeful intent not to do so for purposes of playing "fast and loose" with the court and making a mockery of the judicial process.  The 3rd circuit specifically failed to adopt a rule that the bad faith intent for judicial estoppel could be inferred from the mere act of non-disclosure in a bankruptcy proceeding.  The court was unwilling to treat careless or inadvertent non-disclosures as equivalent to deliberate manipulation when administering the "strong medicine" of judicial estoppel. Instead, a specific showing of intent must be found whether through testimony of the debtor or through other circumstances.  <u>Ryan Operations G.P.v. Santiam-Midwest Lumber Co.</u> 81. F. 3d 355 (C.A.3 1996).

    Here, no specific bad faith intention to play fast and lose can be shown. As per the 3rd circuit's instructions, the court must look to factor's beyond the mere fact of disclosure to find the requisite intent.  The court should look to the whole circumstances of the debtor's case as well as the debtor's own certification to try to find such intent. The court will find that the non-disclosure was mere garden variety inadvertence, the kind the 3rd Circuit has specifically held not to constitute bad faith.  The court has to understand the timing of when this action accrued in light of the debtor's case.  The debtor's case was filed in November 2006.  The debtor was a below median debtor and was only required to make a thirty-six month plan with the court.  Nevertheless, the debtor proposed to pay back creditors over a fifty-three month plan.  The injury giving rise to the cause of action occurred in February 2010, thirty-nine months after the filing of the case. The court should note that the debtor actually paid off his case in July 2010, in forty-four months and nine months early. However, the debtor did not even

learn he had a viable claim until approximately four years into the case. So arguably the cause of action did not even accrue until four years after the case was filed. The fact of the matter is, this cause of action could very easily have not been estate property in the first place. If the debtor had chosen to, he could have completed his case in thirty-six months and this whole matter would perhaps be moot. Or, if the trustee, after receiving the last payment in July 2010 had issued the debtor's discharge and closed out the case before the fall of 2010, which very easily could have happened, the case would similarly be moot. So essentially, this action is only estate property due to the debtor voluntarily proposing a longer term than required to pay back creditors and due to the trustee's inaction to close the case for many months after plan payments were completed. The point of this is that, and as described in the debtor's certification, for all purposes, the debtor considered this case completed by the time he realized he had a cause of action. Payments were completed and he was merely awaiting the administrative duties of the trustee to complete. Any failure to disclose here is very easily explained when one puts themselves in the debtor's shoes at the time and essentially believes the case to already be over. It was a very understandable mistake and specifically the type the 3rd Circuit has held should not be used as a basis to conclude bad faith. To allow equitable estoppel would also be inequitable as it essentially punishes the debtor for effectuating a longer payment than necessary.

   Finally, as to the final element of the judicial estoppel, that there is no lesser sanction would adequately remedy the damage done by any misconduct of the debtor, the reopening of the case and payment to creditors would accomplish this. The harm through non-disclosure is not that guilty parties such as Inserra are held accountable in state court. Rather, the harm is that creditors in the bankruptcy were not paid more from additional estate assets. Here, the harm can very easily be rectified by allowing repayment to creditors. To reward Inserra by allowing their bad conduct to go unpunished at the expense of creditors is quite clearly not rectifying the damage done by the non-disclosure. The application of judicial estoppel in these circumstances operates to the detriment primarily of innocent creditors and to the benefit of only the bad actor. By allowing the reopening to amend the schedules the creditors may now stake a claim in the lawsuit. By not permitting the civil action to go forward, creditors lose out on a potential recovery. See <u>Quin v. County of Kauai Department of Transportation (In Re Quin)</u> (C.A.9 2013).

   For the following reasons, I respectfully request that the court allow the reopening of the debtor's case and issue any other orders as the court deems just.

```
                                    /s/ HERBERT B. RAYMOND, ESQ.
                                    ----------------------------
                                    Herbert B. Raymond, Esq.
```